**UNITED STATES of America, Appellee,**

v.

**Bienvenido BONNET, a/k/a "Mon", Defendant-Appellant.**

**No. 1381, Docket 85–1069.**

United States Court of Appeals, Second Circuit.

Argued June 26, 1985.

Decided July 29, 1985.

Edward S. Panzer, New York City (Steven L. Wershaw, New York City, on the brief), for defendant-appellant.

Lawrence S. Robbins, Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty. for the E.D.N.Y., Allyne R. Ross, Asst. U.S. Atty., Brooklyn, N.Y., on the brief), for appellee.

---

\* Honorable Daniel M. Friedman, U.S. Court of Appeals for the Federal Circuit, Washington,

Before KEARSE, CARDAMONE and FRIEDMAN \*, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Bienvenido Bonnet, a/k/a "Mon," appeals from a judgment of conviction entered in the United States District Court for the Eastern District of New York, Leonard D. Wexler, *Judge*, convicting him, after his plea of guilty, of two counts of unlawfully transporting in interstate commerce motor vehicles that he knew had been stolen, in violation of 18 U.S.C. §§ 2312 and 2 (1982). Bonnet was sentenced to consecutive terms of imprisonment of five years on each count. On appeal, he contends that the severity of his sentence violated the Eighth Amendment prohibition against cruel and unusual punishments and that the court failed to apply properly the Youth Corrections Act ("YCA" or the "Act"), 18 U.S.C. §§ 5005 *et seq., repealed by* Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, § 218(a)(8), 98 Stat. 1837, 2027. Finding no merit in his contentions, we affirm the judgment of the district court.

## I. BACKGROUND

In early 1984, Bonnet was indicted on seven counts of a nine-count indictment charging him with, *inter alia,* conspiring to transport stolen motor vehicles in interstate commerce, in violation of 18 U.S.C. § 371 (1982); transporting such vehicles in interstate commerce while knowing them to be stolen, in violation of 18 U.S.C. §§ 2312 and 2; and knowingly transporting counterfeit certificates of title in interstate commerce, in violation of 18 U.S.C. §§ 2314 and 2. Bonnet pleaded guilty to two of the counts charging him with the transportation of stolen vehicles. Prior to sentencing, Bonnet moved under *United States v. Fatico,* 579 F.2d 707 (2d Cir.1978), *cert. denied,* 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980) (*"Fatico "*), to challenge certain portions of his presentence report, and he

D.C., sitting by designation.

requested that the court consider sentencing him under the YCA.

With respect to the presentence report, Bonnet challenged principally sections that characterized him as a major thief of luxury automobiles and as a transporter of those automobiles to the Dominican Republic and other places, often in exchange for narcotics. The *Fatico* hearing and other post-plea events resulted in a record that revealed, *inter alia*, that in Bonnet's operation a "very substantial number of cars" had been transported or stolen; that while under surveillance by agents of the FBI for a period of just 16–18 days, Bonnet personally had stolen eight different cars; that a number of stolen cars had been sent by Bonnet to the Dominican Republic; that a search of Bonnet's apartment pursuant to a search warrant had revealed a virtual warehouse of tools and supplies for the auto larceny business, including "slap hammers" for removing car locks and ignitions, dies for altering vehicle identification numbers, and blank automobile documents such as registration certificates, insurance cards, and certificates of title. The search also turned up a narcotics scale, a narcotics strainer, and nearly half a kilo of lactose, which is used to cut cocaine to increase its street value. The government stipulated, *inter alia*, that it had no witnesses who could testify that they had personally seen Bonnet participate in the sale of automobiles for cocaine.

After considering the sentencing record and hearing from counsel and Bonnet, the district court sentenced Bonnet to consecutive prison terms of five years on each of the two counts to which he pleaded guilty. In refusing to grant YCA treatment, the court stated as follows:

> THE COURT: Well, first of all, I am going to deny treatment under the Youthful Offender Act.

> Mr. Bonnet, you are young. You come from a good family. You have some college. But I think you went wild, wild to a degree that we are not dealing with three or five hundred cars, we are dealing with a very substantial amount of stolen cars.

> In the hearing you had, you walked around with an arsenal of stolen cars, changing VIN numbers, changing registrations, phonying up papers. You had a complete operation going on.

> We cannot tolerate that. It was not one mistake; it was not two. This was a calculating scheme to steal, to ship them out and get them out of the country.

> As far as I am concerned, that's the mind of a criminal and it would have gone on and on and on.

In response to Bonnet's counsel's request for reconsideration of the sentence on the ground that Bonnet was a first offender, the court stated, "There are first offenders and first offenders."

## II. DISCUSSION

On this appeal Bonnet contends (1) that the court's failure to sentence him under the YCA was improper because the court did not find that YCA treatment would be of no benefit to him, and (2) that the sentence imposed was so harsh as to violate his Eighth Amendment rights. We disagree with both contentions.

### A. *The Requirements of the YCA*

Preliminarily, we note that the YCA was repealed in October 1984 by Pub.L. No. 98–473, § 218(a)(8), 98 Stat. 1837, 2027, and was not in effect at the time Bonnet was sentenced. The government does not urge that we reject Bonnet's YCA argument on this ground, noting that some courts have ruled that "the repeal of the YCA is an *ex post facto* law to the extent that it precludes a court from considering the YCA in sentencing a youth offender who committed an offense prior to the repeal of the Act." *United States v. Countryman*, 758 F.2d 574, 579 n. 2 (11th Cir.1985); *accord United States v. Romero*, 596 F.Supp. 446, 448–49 (D.N.M.1984). We need not reach this question since we conclude that the district court gave the sentencing of Bonnet the consideration required by the YCA.

As we have recently discussed, the YCA was " 'designed to provide a better method for treating young offenders convicted in federal courts in that vulnerable [16 to 22] age bracket, to rehabilitate them and restore normal behavior patterns.' " *United States v. Fernandez,* 748 F.2d 71, 73 (2d Cir.1984) (quoting *Dorszynski v. United States,* 418 U.S. 424, 433, 94 S.Ct. 3042, 3048, 41 L.Ed.2d 855 (1974)). The YCA was a preferred sentencing alternative for treatment that was to be used in sentencing a youth unless "the court shall find that the youth offender will not derive benefit from treatment under [the YCA]." 18 U.S.C. § 5010(d). In *Dorszynski,* the Supreme Court ruled that although the district court was required by the statute to make a clear "no benefit" finding, this did not require the use of talismanic phrases:

> Literal compliance with the Act can be satisfied by any expression that makes clear the sentencing judge considered the alternative of sentencing under the Act and decided that the youth offender would not derive benefit from treatment under the Act.

418 U.S. at 444, 94 S.Ct. at 3053. In *Fernandez,* we remanded for resentencing because the reasons given by the district court for denying YCA treatment did not even suggest, much less make clear, that the defendant would not benefit from treatment under the Act.

■ The present case is quite distinguishable from *Fernandez.* Although the district court here did not use the phrase "no benefit," it is clear that it focused on the circumstances and pattern of behavior of Bonnet, on the scope of his activities, and on his character as revealed by this record. The court noted that Bonnet was not the usual type of first offender, that he was running a "complete operation," that it was an ongoing enterprise and not a few isolated incidents, and that Bonnet had displayed "the mind of a criminal." These comments reveal that the court had concluded that Bonnet was more a hardened criminal than an impressionable young man who would be restored to normal behavior patterns through less punitive treatment.

We conclude that the court found with the requisite clarity that YCA treatment would not benefit Bonnet.

## B. *The Constitutional Contention*

■ Nor are we persuaded by Bonnet's contention that the imposition on him of two consecutive five-year prison terms for the two counts to which he pleaded guilty constituted cruel and unusual punishment because the prison terms run consecutively and because his codefendant received a less severe sentence. "[T]he Eighth Amendment requires that 'a criminal sentence must be proportionate to the crime for which the defendant has been convicted.' " *United States v. Ortiz,* 742 F.2d 712, 714 (2d Cir.) (quoting *Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983)), *cert. denied,* —— U.S. ——, 105 S.Ct. 573, 83 L.Ed.2d 513 (1984)). However, " '[i]n view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate.' " *Ortiz,* 742 F.2d at 714 (quoting *Solem v. Helm,* 463 U.S. at 290 n. 16, 103 S.Ct. at 3009 n. 16).

Bonnet has not shown that his sentence to two five-year prison terms was disproportionately severe. The maximum penalty that he could have received for each count to which he pleaded guilty was five years' imprisonment plus a $5,000 fine. Although he received the maximum jail sentence, he did not receive the maximum penalty, since no fines were imposed. Further, at the sentencing hearing, when the court imposed a lighter sentence on Bonnet's codefendant, it stated that it viewed Bonnet as the more culpable of the two. Giving the required deference to the legislature, which has established the maximum penalty, and to the sentencing court, which has broad discretion to mete out penalties at or below the statutory maximum, we reject Bonnet's contention that his sentence was impermissibly severe.

We have considered all of Bonnet's arguments on appeal and have found them meritless.

CONCLUSION

The judgment of conviction is affirmed.